■ In the Matter of LUCIA MILEVOI et al., Appellants, v CONCILIATION AND APPEALS BOARD OF THE CITY OF NEW YORK, Respondent.—In a proceeding under CPLR article 78 to review a determination of the respondent dated January 13, 1983, terminating the petitioners' membership in the Rent Stabilization Association as to all of the rent-stabilized apartments located in a certain building, the petitioners appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Queens County (Cohen, J.), dated September 18, 1986, as dismissed the proceeding.

Ordered that the judgment is modified, on the law, by deleting the provision thereof which dismissed that branch of the petition which challenged the penalty imposed, and substituting therefor a provision granting that branch of the petition to the extent of vacating the penalty imposed; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the New York State Division of Housing and Community Renewal (the successor to the Conciliation and Appeals Board of the City of New York), for reconsideration of an appropriate penalty consistent herewith.

In October 1980 a tenant leasing an apartment in a building owned by the petitioners filed a complaint with the New York City Conciliation and Appeals Board (hereinafter CAB). The tenant claimed that the owners were charging rent in excess of the appropriate amount permitted under the rent stabilization laws and refusing to show prior leases for the same apartment despite the tenant's request in September 1979. The tenant also asserted that under a three-year lease for the particular apartment commencing August 1, 1977, the monthly rental charged was $300, although the prior tenant

only paid from $235 to $250 per month for the same apartment.

By notices dated November 14, 1980, and December 8, 1980, the petitioners were informed by CAB that under Code of the Rent Stabilization Association of New York City, Inc. § 42 (A), they were obliged to furnish CAB with complete copies of all leases and riders thereto and other available documentation concerning the rental history of the subject apartment to enable CAB to determine the appropriate lawful rent. The petitioners were further advised that noncompliance with the CAB's requests would be considered a default and they could be subject to a roll back of the tenant's rent based upon the record presently available, and be subject to penalties and other sanctions. In response, the petitioners did not dispute the tenant's allegations, but merely submitted to CAB a copy of the prior tenant's lease for the period of June 15, 1975 to June 14, 1977, at a monthly rate of $280.

Thereafter, in a final notice dated August 31, 1982, the CAB informed the petitioners that they had submitted incomplete data, failing to furnish leases or rent records for the period from June 30, 1974 through June 14, 1975. The petitioners were advised that if they were missing lease or rent ledger documents for that period, they must furnish the CAB with a current rent roll for the entire building within 30 days or be considered in default and the building would be expelled without further notice from the Rent Stabilization Association. The final notice also informed the petitioners that their failure to obtain rental records from a prior owner did not relieve him of his obligations under Code of the Rent Stabilization Association of New York City, Inc. § 42 (A). The petitioners responded by submitting copies of leases and renewals covering the period from June 1975 through 1982, but failed to submit either a lease for the June 1974 to June 1975 period or a current rent roll.

On January 3, 1983, the petitioners were telephoned by an attorney for the CAB who requested the current rent roll, and refused to grant the petitioners' request for a one-month extension to comply with this demand. The CAB then issued an opinion and determination dated January 13, 1983, in which, based upon the owners' continued posture of noncompliance, it (1) rescinded then current guidelines for rent increases in every rent-stabilized apartment in the building, (2) declared that the petitioners' forfeited their status as member in good standing of the Rent Stabilization Association, (3) terminated the membership of all the stabilized apartments in

the building and referred them to the Department of Housing Preservation and Development for proceedings to subject the apartments to the rent control laws, and (4) established the complaining tenant's lawful stabilized rent at $294.74 per month in the interim.

Under Laws of 1983 (ch 403), effective April 1, 1984, the New York State Division of Housing and Community Renewal assumed the responsibilities of the CAB. Although the act amended and repealed certain provisions of the rent stabilization law, it provided that as to any matter or proceeding commenced before the CAB prior to April 1, 1984, the same terms and conditions, rules and regulations in force prior to April 1, 1984, would continue in force and effect (L 1983, ch 403, §§ 19, 20; Administrative Code of City of New York, ch 51, tit YY).

Meanwhile, in 1983 the petitioners commenced the instant proceeding seeking to review the CAB's expulsion order and determination. The Supreme Court, Queens County, dismissed the proceeding, stating that it could not be concluded under the circumstances of the case that the expulsion order was arbitrary or capricious. In part, the court relied upon Code of the Rent Stabilization Association of New York City, Inc. § 7 (b), then effective, whereby the CAB was required to terminate membership in the Rent Stabilization Association on a building-wide basis based upon an owner's noncompliance with a CAB order pursuant to Administrative Code of the City of New York former § YY51-6.0 (c) (10) and (11), prior to its amendment by the Legislature in 1983.

On this appeal, the petitioners challenge the subject determination on numerous grounds. We find that the CAB's finding that the petitioners were guilty of noncompliance with the various notices and demands is rational and supported by the evidence in the record. However, we conclude that the penalty of expulsion of the entire building from the Rent Stabilization Association constituted an abuse of discretion under the circumstances of this case (see, Matter of Pell v Board of Educ., 34 NY2d 222; cf., Matter of Thwaites Place Assocs. v New York City Conciliation & Appeals Bd., 81 AD2d 804, affd 54 NY2d 798; Matter of Turian House v Conciliation & Appeals Bd., 54 AD2d 945). Although the petitioners failed to timely submit a current rent roll as requested, they complied, in part, with the CAB's demands and requests to the extent of producing copies of leases for the subject apartment leaving a gap in the rental history of only one year.

Administrative Code former § YY51-6.0 (c) (10) and (11),

repealed under Laws of 1983 (ch 403, §§ 7, 9), which mandated the penalty of expulsion be imposed against any owner who did not comply with any "order" of the CAB, are applicable to this case. However, although the record indicates that the petitioners failed to timely and fully comply with the CAB's notices and requests for the production of documents, no formal order was ever issued by CAB which was not complied with by the petitioners and upon which CAB could rely to subsequently impose the penalty of expulsion. Moreover, to expel the petitioners' entire building from membership in the Rent Stabilization Association as a result of their failure to produce complete rental records as to one particular apartment is a penalty shockingly disproportionate to their non-compliance with the CAB's notices and requests.

We have considered the petitioners' remaining contentions and find them to be without merit. Mangano, J. P., Brown, Harwood and Balletta, JJ., concur.